# Wytheville.

## STUART, GOVERNOR, ETC., AND OTHERS V. SMITH-COURTNEY COMPANY.

### June 13, 1918.

1. STATE—*Action Against—Under Section 746 of the Code of 1904.*—Proceedings based upon contracts will lie against the State and its agencies under section 746 of the Code of 1904. Sections 747, 748 and 749, immediately following, provide for the procedure, while section 750 limits the effect of judgments or decrees which may be rendered against the Commonwealth in such proceedings.

2. STATE—*Action Against—Under Section 746 of the Code of 1904—Construction of Statute.*—The statute (sections 746, 750, Code of 1904) providing for relief against the State by proceedings based upon contract, will be liberally construed.

3. STATE—*Action Against—Under Section 746 of the Code of 1904—Construction of Statute.*—The Commonwealth will not be astute to escape inquiry into its liability for its alleged contracts, or to take advantage of technical defenses which are permissible to other litigants.

4. INSTRUCTIONS—*Based Upon the Evidence.*—While it is error to give instructions when there is no evidence tending to prove the facts upon which the instructions are based, the Supreme Court of Appeals cannot pronounce instructions erroneous merely if of the opinion that the suggestions of fact therein are against the weight of the evidence. To the jury is confided the responsibility of determining the weight of the testimony, and if there is evidence introduced upon which the instructions may be based the giving of the instructions by the lower court is not error.

5. WITNESSES—*Documentary Evidence—Refreshing Memory.*—Where a witness, who had made certain written reports was upon the witness stand with the reports in his hand. refreshed his memory from time to time therefrom, and might have testified, and indeed did testify. as to every fact therein contained which was deemed pertinent by either of the parties, it was not error to exclude the reports themselves.

6. APPEAL AND ERROR—*Harmless Error—Exclusion of Evidence.*—

Where a witness who has made certain official reports testified as to all pertinent or material facts contained in the reports, if there was any error in refusing to admit the reports, which could only be upon the theory that they had some additional sanction because they were alleged to be official reports, the error was clearly harmless.

7. APPEAL AND ERROR—*Conflicting Evidence.*—Where issues are fairly submitted to a jury upon conflicting evidence, the verdict of the jury, sanctioned by the trial court, is generally accepted as conclusive.

8. NEW TRIAL—*Verdict Contrary as to the Law and Evidence—Conflicting Evidence—Issue out of Chancery.*—Even in an issue out of chancery, the finding of a jury will not be disturbed unless it is palpably and obviously erroneous, or is without evidence to support it.

9. CONSTITUTIONAL LAW — *Judiciary Interfering with Executive Functions.*—In trying a case brought by a contractor, claiming a balance due for the construction of a lime grinding plant, under a contract with the Convict Lime Board, the Circuit Court of the city of Richmond was not substituting its discretion and that of the jury for the discretion of the Convict Lime Board, but was merely ascertaining in the method prescribed by statute whether or not, under the contract, there was any debt fairly due by the Commonwealth to the plaintiff. The board had the discretion to discard the machinery and to substitute other machinery therefor.

10. STATE—*Pecuniary Obligation Founded on Contract—Enforcement of Judgment.*—While the exercise of governmental discretion can never be controlled or directed by the courts, if it is alleged that out of the exercise of such discretion there arises a pecuniary obligation of this Commonwealth, based upon a contract, the Circuit Court of the city of Richmond is open for the determination of that issue. Such proceedings, however, if they result in a judgment, simply establish the demand. No execution can be levied thereunder to subject either the property of the State, its governmental agencies, or that of persons constituting such governmental agency. A special appropriation is necessary before the payment of such demand.

11. REMITTITUR.—Where a contractor filed its petition in the Circuit Court of the city of Richmond against the members of the Convict Lime Board, under a contract with the board, claiming a balance due for the construction of a lime grinding plant, the reduction by the trial court of the verdict of the jury for the plaintiff, because certain charges, chiefly for repairs, which were made during the time the plaintiff was making efforts to correct deficiencies in the plant, had been included therein was proper.

Error to a judgment of the Circuit Court of the city of Richmond, upon a petition against the members of the Convict Lime Board, the Auditor of Public Accounts and the Treasurer. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile* and *Robt. E. Scott,* for the plaintiffs in error.

*Christian, Gordon & Christian,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The Smith-Courtney Company, hereinafter called the plaintiff, claiming a balance due for the construction of a lime grinding plant at Staunton, under a contract with the Convict Lime Board (composed of the Governor, the Superintendent of the Penitentiary and the Commissioner of Agriculture), filed its petition in the Circuit Court of the city of Richmond against the members of the board, the Auditor of Public Accounts and the Treasurer, hereinafter called the defendants, under section 746 of the Code, and the court empaneled a jury, under section 748, which found a verdict for the plaintiff, of which the defendants are here complaining.

1. The first error alleged is the refusal of the court to sustain a demurrer to the petition. The grounds of this demurrer are stated in this language:

"That this is a suit against the State government, or a board created by the State for governmental purposes, and cannot be maintained without the consent of the State, and that the statute which created the State Lime Grinding

30

Board does not authorize it to sue or be sued, and that there is no other statute which authorizes a suit to be maintained against the State Lime Grinding Board."

It is agreed that the board was created by the State for governmental purposes (*Shenandoah Lime Co.* v. *Mann, Governor of Virginia,* 115 Va. 865, 80 S. E. 753, Ann. Cas. 1915 C, 973), and that, therefore, this proceeding is in effect a suit against the State which cannot be maintained without the consent of the State. The plaintiff, however, relies upon section 746 of the Code as expressly giving such consent.

That statute reads as follows: "When the Auditor of Public Accounts shall disallow, either in whole or in part any such claim against the Commonwealth as is provided for by section seven hundred and sixty-five, the person presenting such claim may petition the Circuit Court of the city of Richmond for redress. And where a person has any other claim against the Commonwealth, redress may be obtained in the said court, by a petition or by a bill in chancery, according to the nature of the case."

The question is not a new one in this State, and it may be regarded as settled that proceedings based upon contracts will lie against the State and its agencies by authority of this statute. Sections 747, 748 and 749, immediately following, provide for the procedure, while section 750 limits the effect of judgments or decrees which may be rendered against the Commonwealth in such proceedings. *Dunnington* v. *Northwestern Turnpike,* 6 Gratt. (47 Va.) 160; *Higginbotham's Executrix* v. *Commonwealth,* 25 Gratt. (66 Va.) 637; *Eastern Lunatic Asylum* v. *Garrett,* 27 Gratt. (68 Va.) 163; *Parsons* v. *Commonwealth,* 80 Va. 167. It is also true that the statute does not authorize actions against the State or its governmental agencies based upon torts. *Sayre* v. *Northwestern Turnpike,* 10 Leigh (37 Va.) 454; *Maia's Adm'r* v. *Eastern State Hospital,* 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577. Nor can suits to establish mechanics' liens

against public property be maintained. *Phillips* v. *University of Va.*, 97 Va. 472, 34 S. E. 66, 47 L. R. A. 284. That the statute will be liberally construed is also indicated in *Green* v. *Marye, Auditor*, 112 Va. 352, 71 S. E. 555, where, in the view which the court took of that case, it is said: "It is immaterial whether the proceeding is to be regarded as one at law or in equity; or whether the evidence has been incorporated into the record by a proper bill of exceptions or not; or whether the alleged agency of petitioners' intestates was joint or several; or whether the alleged contract upon which this action is brought should be construed to be a contract for procuring legislation, and, therefore, void as *contra bonos mores.*"

The demurrer then was properly overruled, for the Commonwealth will not be astute to escape inquiry into its liability for its alleged contracts, or to take advantage of technical defenses which are permissible to other litigants.

2. The next assignment of error is that the court erred in giving for the plaintiff these instructions:

III. "The court instructs the jury that if they believe that the plaintiff company furnished the defendant Lime Grinding Board with machines which were capable of performing the work as specified in the contract and under the conditions as called for in the contract, and that there was a failure on the part of the purchasers of said machines to operate the said machines in an intelligent and efficient way, and to supply competent and intelligent supervision, and that the failure to secure capacity, and the breakages, if any, in said machines were directly attributable to the unintelligent and inefficient operation of said plant, and to no inherent and incurable vice in said machines, then the jury is instructed that they shall find for the plaintiff; provided you shall believe from the evidence that the plaintiff, in all other respects, complied with the terms of its contract."

I. "If the jury believe from the evidence that the

machines, when operated by the plaintiffs, did produce the capacity required by the contract, and that such machines, when operated by the defendants, would have produced the required capacity had they been operated under proper management, then they shall find for the plaintiffs; provided you shall believe from the evidence that the plaintiff, in all other respects, complied with the terms of its contract."

This objection is based upon the rule that it is error to give instructions when there is no evidence tending to prove the facts upon which the instruction is based.

This proposition of law is established, but we cannot agree that there is no evidence upon which to base these instructions. While it may fall far short of convincing us that there was any failure on the part of the defendants or their agents to operate the machinery properly or to supply competent and intelligent supervision, or that there was the slightest improper management; still those are not questions for us to determine. We cannot under our system pronounce instructions erroneous merely if of the opinion that the suggestions of fact therein are against the weight of the evidence. To the jury is confided the responsibility of determining the weight of the testimony, and there is no doubt whatever that there was evidence introduced by the plaintiff sufficient to justify the giving of these instructions, and especially that tending to indicate the inexperience of the superintendent of the plant. We think, therefore, that the court committed no error in this respect.

Under this assignment the defendants' counsel also suggest that the instruction "III," "is framed on the theory that the plaintiff contracted to furnish certain machinery, while in fact the contract was to build and equip a plant capable of certain results." While this is undoubtedly true, nevertheless it is likewise true that the controversy very largely grew out of the deficiency of certain parts of the

machinery which were clearly specified, and which were afterwards removed from the plant and replaced with certain other machinery more satisfactory to the board.

3. Another assignment of error is the refusal of the court to permit the introduction of certain written reports made by the superintendent of the plant to the board.

While there might be circumstances under which it would be error to refuse to admit such reports, still it is not true under the circumstances of this case, because Vines, the superintendent, who made the reports was upon the witness stand with the reports in his hand, and refreshed his memory from time to time therefrom, and might have testified as to every fact therein contained. Indeed, as a matter of fact, he did testify to all of the facts therein contained which were deemed pertinent by either of the parties.

An examination of these reports, however, which are embodied in one of the bills of exceptions, does not show that there was any pertinent or material fact therein to which the witness did not testify. They support the defendants' view and show, in the main, the inefficiency of the alleged defective machinery, but certain excerpts can be made from them which indicate that occasionally the machinery operated properly, and sometimes there was no criticism of the results accomplished. If, therefore, there was any error in refusing to admit the reports, which could only be upon the theory that they had some additional sanction because they were alleged to be official reports, the error was clearly harmless.

4. The fourth assignment of error is to the refusal of the court to set aside the verdict as contrary to the law and the evidence.

We do not think it is necessary to enter into any discussion of the evidence. It is sufficient to say that, according to the testimony of the defendants, the plant was deficient; that the plaintiff failed to perform its contract; that there

was no reason to suppose that by any further extension of time the machinery could be so added to or repaired as to make it efficient; that the farmers of the State were demanding ground limestone, and, as there had already been great and unanticipated delay, that they had a right to expect it; and that in the performance of their public duty and in the exercise of their discretion, it was necessary to discard the defective machinery and to substitute other and better machinery therefor; while, on the other hand, according to the testimony of the plaintiff, it was greatly handicapped by the fact that it expected the machinery to grind what was denominated in the contract as a "good grade of clean limestone," according to their view of the ordinary meaning of those words, whereas it turned out that instead of the limestone being of that character—that is, limestone containing 95 to 98 per cent. of calcium carbonate—it in fact contained only 66 per cent. of calcium carbonate and 28 per cent. magnesium carbonate, making it a very much harder substance and much more difficult to grind; that if further time had been given it would have brought the plant up to its proper efficiency; that the superintendent did not operate it with proper care; that the deficiencies arose from causes beyond its control; and that if a reasonable time had been allowed by the defendants all of these defects would have been corrected. The record shows that the conflict of opinion was more acute than the conflict of evidence. These issues were fairly submitted to a jury, and, in accordance with precedents where such conflicts arise, the verdict of the jury, sanctioned by the trial court, is generally accepted as conclusive.

It is urged that we should not consider this verdict as upon a demurrer to the evidence under section 3484 of the Code. This, in our view, is immaterial, for even in an issue out of chancery, the finding of a jury will not be disturbed unless it is palpably and obviously erroneous, or is without

evidence to support it. *Barbour* v. *Melendy & Russell*, 88 Va. 598, 14 S. E. 326; *N. & W. Ry. Co.* v. *Allen & Sons*, 122 Va. 603, 95 S. E. 406.

In trying the case the court was not substituting its discretion and that of the jury for the discretion of the Convict Lime Board, but was merely ascertaining in the method prescribed by statute whether or not, under the contract, there was any debt fairly due by the Commonwealth to the plaintiff. The board had the discretion to discard the machinery and to substitute other machinery therefor, but, as is said by Judge Bouldin in *Higginbotham's Executrix* v. *Commonwealth, supra:* "It has ever been the cherished policy of Virginia to allow her citizens and others the largest liberty of suit against herself, and there never has been a moment since October, 1778, (but two years and three months after she became an independent State) that all persons have not enjoyed this right by express statute." So that while the exercise of governmental discretion can never be controlled or directed by the courts, if it is alleged that out of the exercise of such discretion there arises a pecuniary obligation of this Commonwealth, based upon a contract, the Circuit Court of the city of Richmond is open for the determination of that issue. Such proceedings, however, if they result in a judgment, simply establish the demand. No execution can be levied thereunder to subject either the property of the State, its governmental agencies, or that of persons constituting such governmental agency. Burks' Pl. & Pr., 629. By section 750 it is expressly provided that no judgment or decree against the Commonwealth, unless otherwise expressly provided, shall be paid without a special appropriation therefor by law, and section 186 of the Constitution prohibits any payments out of the State treasury except in pursuance of appropriations made by law. Fortunately for the plaintiff, the General Assembly at its last session, alert to continue the ancient

policy of the State, and "in order to avoid injury to all parties" (as stated in the act), by the act entitled "An act for the relief of the Smith-Courtney Company," approved February 5, 1918, (Acts, 1918, p. 21), has made an appropriation for the payment of this judgment if it shall be finally determined to be valid.

The trial court reduced the verdict of the jury, because certain charges, chiefly for repairs which were made during the time the plaintiff was making efforts to correct the deficiencies, had been included therein, and this is assigned as error by the plaintiff. We think that this reduction was clearly proper.

*Judgment affirmed.*