# Wytheville.

FRY V. COUNTY OF ALBEMARLE.

86   195
86   533
87   236

JUNE 13th, 1890.

COUNTIES—*Actions— When maintainable.*—Counties are political sub-divisions of the state, and, like the state, cannot be sued except in cases where by statute such suits are allowed, as in cases growing out of contracts with them, but not for injuries resulting from negligence of their officers or servants. Otherwise, as to municipal corporations.

Error to judgment of circuit court of Albemarle county, rendered May 14, 1888, affirming the judgment of the county court of said county, affirming the decision of the board of supervisors rejecting the petition of Lucy L. Fry, the plaintiff in error, setting up against said county a claim for $5,000 for personal injuries resulting to her through the negligence of the county's servant. Opinion states the case.

*Davis & Harman,* for the plaintiff in error.

*Micajah Wood* and *H. M. Tyler,* for the defendant in error.

LACY, J., delivered the opinion of the court.

The plaintiff in error here filed her petition before the board of supervisors of Albemarle county on the 25th day of July, 1887, representing that she came to Charlottesville in a buggy drawn by one horse, on the 21st day of April, 1887, from a point in the county of Albemarle, in company with another

lady, who was riding in the same buggy. In the afternoon, about 4:30 P. M., on their way home, they were driving along one of the public roads of Albemarle county, going cautiously and carefully down a hill, when they came to a point where the public road was being worked on by a chain gang, composed of convicts out of the state prison, or penitentiary house, at Richmond, organized by the county of Albemarle by authority of an act of assembly in that case made and provided. When seeing a cart with a mule hitched to it, moving up the hill, with one of these convicts walking by the side of the cart, they turned out of the way on their right hand side as far as they could, and stopped and called out to the convict to look to the mule; that he was very slow to do this, and so slow and negligent about it that the cart collided with the buggy and turned it, together with its occupants, into the ditch on the road-side, and hurt the petitioner very much, by which she had been caused suffering and loss in physician's fees, and other expenses, and that she believed herself to be permanently injured. That this convict was an employee of the county of Albemarle, and that the county was therefore liable in damages for these personal injuries inflicted upon her by the county's servant, and she demanded $5,000 for the same.

This claim the board of supervisors rejected, and she appealed to the county court, where her petition was again rejected; and thereupon she appealed to the circuit court of the said county, when the judgment of the county court was affirmed; whereupon she brought the case here by writ of error.

The petition was rejected in the county court upon demurrer, so all we have to consider here is the single question whether the petition presents a case for which the county of Albemarle is liable to answer in damages.

The decision of the lower courts in this case is founded upon the principle that the sovereign cannot be sued except by its own consent, as may be provided by law; and that in the exercise of its sovereign power, it is liable neither for misuse

nor nonuser; and that a county in this state is a political subdivision of the state for governmental purposes as prescribed by public law, and is no more than the state liable to be sued for its public acts, and that it cannot be held chargeable for the acts of an officer whose duties are fixed and prescribed by law.

Suits against the state are allowed by law under certain regulations. And in certain specified and enumerated cases counties in this state are authorized to sue and are suable in the circuit court held for such county in their own names, but these are limited. The thirteenth section of chapter 45 of the Code of 1873, provides that: "Counties may sue in their own names for forfeitures, fines, or penalties given by law to such counties, or upon contracts made with them, and may be sued in their own names, in the circuit court of such county."

The legislature has given a remedy in cases growing out of contracts with counties, but it has given no remedy against a county for the negligence of a public officer or servant appointed by law, and we may observe, as did Lord Kenyon long ago, that the question here is, "Whether this body of men who are sued in the present action are a corporation, or a *qua* corporation against whom such an action can be maintained. If it be reasonable that they should be by law liable to such an action, recourse must be had to the legislature for that purpose." 2d T. R. 671. "And even if we could exercise legislative discretion in this case there would be great reason for not giving this remedy."

The rules established by the courts concerning municipal corporations have but slight application to counties organized as ours are. Our counties are parts of the state, political subdivisions of the state, created by the sovereign power for the exercise of the functions of local government.

As was said by a learned judge in a case not now modern: "Counties are at most but local organizations, which for the purposes of civil administration are invested with a few functions characteristic of a corporate existence. They are local

sub-divisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them." *Hamilton County* v. *Mighels,* 7 Ohio St., 109.

A municipal corporation proper is created mainly for the interest, advantage, and convenience of its locality and its people.

A county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and of transport, and especially for the general administration of justice.

With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, *and are in fact but a branch of the general* administration of that policy. (Opinion of Bunkenhoff, J., in same case.)

In that case it was sought to make the county liable in damages to one who suffered a personal injury from the neglect of the commissioners of the county in the discharge of their official duties. And the court said: "But it is said the members of the board of county commissioners are chosen by the electors of the county, and hence the board is to be regarded as the agents of the county, for whose torts in the performance of official duties the county ought to be responsible.

"True, the people of the county elect the board of county commissioners; but they also elect the sheriff and treasurer of the county. Are the people of the county, therefore, responsible for the malfeasance in office of the sheriff, or for the official defalcations of the county treasurer?

"We cannot but think that county commissioners are not agents or representatives of the counties in any such sense or manner as to render the people of the county justly answerable for their neglect, even if the neglect be such as would create a

civil liability against a natural person, or a *municipal or private* corporation." It is, he adds, undoubtedly competent for the legislature to make the people of a county liable for the official delinquencies of the county commissioners; but this has not been done, and we think such liability cannot be derived from the relations of the parties either on the principles or the precedents of the common law." See, also, *Jacobs* v. *Hamilton Co.*, 4 Fisher Pat. Cas., 81; *Soper* v. *Henry Co.*, 26 Iowa, 264; *Treadwell* v. *Commissioners*, 11 Ohio St., 190; Angell & Ames, secs. 14, 23, 24, 25; Dil. Mun. Cor., secs. 9, 32, 39, 761, 762.

In this case the county of Albemarle is sued to recover damages resulting from the alleged negligence of a state convict engaged in working on the public roads of the state; the public highways in the county of Albemarle belong to the commonwealth, not to the county; and of the alleged negligence of a superintendent who was appointed by the authority of a state law.

No suit can be maintained against the county of Albemarle upon the principles of *respondeat superior*, because the relation of master and servant did not exist; such officers are *quasi* public officers of the state. For although the officer in charge was appointed by the county, yet the office and duties incident to it were created by an act of the legislature, for the general public welfare, the public roads of Albemarle county being highways of the commonwealth for the common benefit of all the people of the state, who have a right to use them.

We have been referred to numerous decisions concerning the *character of the duty* required of these and other officials similarly situated, drawing a distinction where the duty is for the *benefit of the general public* and where it is for the *benefit of a corporation*, but we do not cite them. They are more distinctly applicable to municipal organizations proper than to such organizations as counties, which are rather political sub-divisions of the state, or, as sometimes denominated, *quasi* corporations.

Upon reason as well as upon authority, we are clearly of opinion that the judgment of the circuit court affirming the judgment of the county court of Albemarle was plainly right, and the same will be here affirmed.

JUDGMENT AFFIRMED.